# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

DESTINEY N. HIGDON,                    Case No. 1:20-cv-458
     Plaintiff,                       Litkovitz, M.J.

     vs.

COMMISSIONER OF                        **ORDER**
SOCIAL SECURITY,
     Defendant.

Plaintiff Destiney N. Higdon brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying plaintiff's application for supplemental security income ("SSI").

This matter is before the Court on plaintiff's Statement of Errors (Doc. 14), the Commissioner's

response in opposition (Doc. 21), and plaintiff's reply memorandum (Doc. 22).

## I. Procedural Background

Plaintiff protectively filed her application for SSI in January 2017, alleging disability

since June 28, 2014[1], due to the worsening of Histocytois X, interstitial lung disease,

emphysema, COPD, lupus, anxiety, fibromyalgia, and hypothyroidism.  The application was

denied initially and upon reconsideration.  Plaintiff, through counsel, requested and was granted

a *de novo* hearing before administrative law judge ("ALJ") Stuart Adkins.  Plaintiff and a

vocational expert ("VE") appeared and testified at the ALJ hearing on April 10, 2019.  On May

15, 2019, the ALJ issued a decision denying plaintiff's SSI application.  This decision became

---

[1] Plaintiff's previous application for benefits was filed on November 16, 2012 and denied by ALJ decision on June 27, 2014.  (Tr. 15).  After the Appeals Council declined jurisdiction, plaintiff filed a complaint with the United States District Court for the Southern District of Ohio.  *See Higdon v. Comm'r of Soc. Sec.*, No. 1:15-cv-743.  On August 24, 2016, the District Court affirmed the ALJ's decision.  *See Id.*, Doc. 21.  The ALJ's decision became final and binding when plaintiff did not appeal the Court's decision.

the final decision of the Commissioner when the Appeals Council denied review on April 13, 2020.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for SSI, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920 (b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548

(6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy.  *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

## B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] has not engaged in substantial gainful activity since January 10, 2017, the application date (20 CFR 416.971 *et seq.*).

2. The [plaintiff] has the following severe impairments: histocytosis; interstitial lung disease; emphysema; chronic obstructive pulmonary disorder (COPD); lupus; fibromyalgia; and anxiety disorder (20 CFR 416.920(c)).

3. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, [the ALJ] finds that the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) with no exposure to odors, dust, fumes, gases or poor ventilation and no exposure to the extremes of heat, cold or humidity.  She is able to tolerate only occasional contact with coworkers and the public.  She should have no jobs which have a production rate pace or strict performance quotas.  She is able to tolerate occasional changes to routine work setting defined as 1-2 per week.

5. The [plaintiff] is unable to perform any past relevant work (20 CFR 416.965).

6. The [plaintiff] was born [in] . . . 1982 and was 34 years old, which is defined as a younger individual age 18-44, on the date the application was filed. (20 CFR 416.963).

7. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 416.969 and 416.969a).[2]

10. The [plaintiff] has not been under a disability, as defined in the Social Security Act, since January 10, 2017, the date the application was filed (20 CFR 416.920(g)).

(Tr. 18-29).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

---

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative sedentary, unskilled occupations such as surveillance system monitor (60,000 jobs in the national economy); charge account clerk (85,000 jobs in the national economy); and weight tester (15,000 jobs in the national economy). (Tr. 28, 60).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).  *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D.  Specific Errors

On appeal, plaintiff alleges that the ALJ erred in weighing the opinions from her treating physicians, Dr. Chacko J. Alappatt and Dr. W. Scott Glickfield.  (Doc. 14 at PAGEID 728-33).[3] Plaintiff also alleges that the ALJ "failed to properly consider and address the additional limitations caused by the significant side effects from [plaintiff's] many prescribed medications." (*Id*. at PAGEID 733).  Finally, plaintiff alleges that the ALJ "reversibly erred by applying substantially more rigorous scrutiny to the opinions of longtime treating sources Dr. Alappatt and Dr. Glickfield than to the opinions of the state agency non-examining sources."  (*Id*. at PAGEID 733-34).  In response, the Commissioner contends that the ALJ reasonably weighed the opinions of plaintiff's treating physicians, and the ALJ's decision in all other regards in substantially supported by the record.  (Doc. 21).

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight.[4]  Under the treating physician rule, "greater deference is generally given to

---

[3] Plaintiff alleges no error in the ALJ's weighing of the other various medical opinions in the record.

[4] 20 C.F.R. § 416.927, which sets out the treating physician rule for evaluating opinion evidence for SSI claims, has been amended for claims filed on or after March 27, 2017.  *See* 20 C.F.R. § 416.920c.  This amendment does not apply to plaintiff's claims, which she filed in January 2017.  (*See* Tr. 15).

the opinions of treating physicians than to those of non-treating physicians. . . ." *Rogers*, 486

F.3d at 242; *Wilson*, 378 F.3d at 544. The rationale for the rule is that treating physicians are

"the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's]

medical impairment(s) and may bring a unique perspective to the medical evidence that cannot

be obtained from the objective medical findings alone." *Rogers*, 486 F.3d at 242.

A treating source's medical opinion must be given controlling weight if it is (1) "well-

supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not

inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. §

416.927(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). If a

treating source's medical opinion is not entitled to controlling weight, the ALJ must apply the

following factors in determining what weight to give the opinion: the length of the treatment

relationship and the frequency of examination, the nature and extent of the treatment

relationship, supportability of the opinion, consistency of the opinion with the record as a whole,

and the specialization of the treating source. 20 C.F.R. § 416.927(c). *See Wilson*, 378 F.3d at

544. *See also Blakley*, 581 F.3d at 408 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4)

("Treating source medical opinions [that are not accorded controlling weight] are still entitled to

deference and must be weighed using all of the factors provided in . . . 416.927.").

In addition, an ALJ must "give good reasons in [the] notice of determination or decision

for the weight [given to the claimant's] treating source's medical opinion." 20 C.F.R. §

416.927(c)(2). The ALJ's reasons must be "supported by the evidence in the case record, and

must be sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave to the treating source's medical opinion and the reasons for that weight."

*Gayheart*, 710 F.3d at 376 (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5). This

6

requirement serves a two-fold purpose: (1) it helps a claimant to understand the disposition of

h[er] case, especially "where a claimant knows that h[er] physician has deemed h[er] disabled,"

and (2) it "permits meaningful review of the ALJ's application of the [treating-source] rule."

*Wilson*, 378 F.3d at 544.

### 1. Dr. Alappatt

Plaintiff began seeing her treating rheumatologist Dr. Alappatt in 2010 for diffuse joint

aches. (Tr. 277). Although plaintiff treated with Dr. Alappatt from 2010 to 2017, only treatment

records during the relevant disability period are considered in the determination of whether the

ALJ's decision is substantially supported by the record. On September 4, 2014, plaintiff

presented with diffuse joint aches and complained of left hip pain. (Tr. 308). On examination,

Dr. Alappatt noted that plaintiff was well-developed, nourished, and in no apparent distress; had

normal respiratory rate and pattern with no distress and normal breath sounds with no rales,

rhonchi, wheezes or rubs; had a normal cardiovascular rate and rhythm without murmurs; and

was alert and oriented times three with appropriate affect and demeanor. (Tr. 309). Dr. Alappatt

noted that plaintiff had nail clubbing, pain in her left shoulder, and tenderness in 11/18

fibromyalgia tender points and the paraspinal musculature. (*Id*.). On October 15, 2015 plaintiff

presented for a follow-up visit with diffuse joint aches. (Tr. 311). Plaintiff reported that she had

increased pain in her left knee joint for the past three weeks. (*Id*.). On examination, Dr.

Alappatt reported that plaintiff was well-developed, nourished, and in no apparent distress; had

normal respiratory rate and pattern with no distress and normal breath sounds with no rales,

rhonchi, wheezes or rubs; had a normal cardiovascular rate and rhythm without murmurs; was

alert and oriented times three with appropriate affect and demeanor; and had nail clubbing, pain

in her left shoulder, multiple fibromyalgia tender points, tenderness in her left knee, and Pes

Anserine Bursda (sic) left knee. (*Id*.). Dr. Alappatt injected Toradol 60mg IM in plaintiff's right gluteal area in a sterile fashion without complication. (Tr. 311-13).

On follow-up appointment with Dr. Alappatt on February 3, 2016, plaintiff reported that she had pain in her shoulder and elbow for the last two weeks. (Tr. 314). Dr. Alappatt noted that plaintiff had some worsening dyspnea on exertion and rest, but plaintiff had not been back to see any pulmonology provider in about two years. (*Id*.). On examination, Dr. Alappatt reported that plaintiff was well-developed, nourished, and in no apparent distress; had normal respiratory rate and pattern with no distress and normal breath sounds with no rales, rhonchi, wheezes or rubs; had a normal cardiovascular rate and rhythm without murmurs; was alert and oriented times three with appropriate affect and demeanor; and had nail clubbing, pain in her left shoulder, and tenderness in her left subacromial area and the medial epicondyle. (*Id*.). Dr. Alappatt opined that "[a]lthough [plaintiff] ha[d] been told in the past by multiple providers that 'she ha[d] Lupus' we are not able to confirm this diagnosis." (Tr. 315). Dr. Alappatt noted that plaintiff seemed to respond to NSAID therapies and occasional injections. (*Id*.). Dr. Alappatt injected plaintiff's subacromial bursa on this date. (*Id*.). He also suggested that plaintiff see a local lung specialist because she had been seen "at UC at one point but she has not returned to follow-up." (*Id*.).

On follow-up appointment with Dr. Alappatt on June 12, 2016, plaintiff reported joint and muscle pain. Plaintiff stated she had seen a local pulmonary specialist and had pulmonary function tests completed. (Tr. 317). On examination, Dr. Alappatt reported that plaintiff was well-developed, nourished, and in no apparent distress; had normal respiratory rate and pattern with no distress and normal breath sounds with no rales, rhonchi, wheezes or rubs; had a normal cardiovascular rate and rhythm without murmurs; was alert and oriented times three with

8

appropriate affect and demeanor; and had nail clubbing, pain in her left shoulder, and multiple fibromyalgia tender points. (Tr. 318). Dr. Alappatt stated that plaintiff had a "poorly defined muscle and joint syndrome associated with her unusual progressive chronic lung disease." (Tr. 319). Dr. Alappatt indicated that he wrote "a letter limiting her [plaintiff] to 5 hours/week work." (*Id*.).

Plaintiff reported for a follow-up appointment with Dr. Alappatt on July 15, 2016 with right knee pain, some swelling, and back pain. (Tr. 320). On examination, Dr. Alappatt reported that plaintiff was well-developed, nourished, and in no apparent distress; had normal respiratory rate and pattern with no distress and normal breath sounds with no rales, rhonchi, wheezes or rubs; had a normal cardiovascular rate and rhythm without murmurs; was alert and oriented times three with appropriate affect and demeanor; and had nail clubbing, pain and effusion in her right knee, and multiple fibromyalgia tender points. (Tr. 321). A musculoskeletal ultrasound of plaintiff's right knee was performed in which Dr. Alappatt observed joint space narrowing and a small effusion medially and laterally that was compatible with arthropathy. (Tr. 322).

Plaintiff reported knee pain and swelling on her July 20, 2016 follow-up visit with Dr. Alappatt. (Tr. 324). On examination, Dr. Alappatt reported that plaintiff was well-developed, nourished, and in no apparent distress; had normal respiratory rate and pattern with no distress; was alert and oriented times three with appropriate affect and demeanor; and had nail clubbing, pain and effusion in her right knee, and multiple fibromyalgia tender points. (Tr. 321). On September 23, 2016, plaintiff presented to Dr. Alappatt for a follow-up appointment where she complained of persistent bilateral knee pain. (Tr. 327). Dr. Alappatt noted that plaintiff still had knee pain and the previous injection "did not help that much." (*Id*.). Dr. Alappatt recommended an x-ray and strongly considered that plaintiff receive an MRI. (Tr. 329). On examination, Dr.

Alappatt noted that plaintiff was well-developed, nourished, and in no apparent distress; had normal respiratory rate and pattern with no distress and normal breath sounds with no rales, rhonchi, wheezes or rubs; was alert and oriented times three with appropriate affect and demeanor; and had nail clubbing, bilateral knee pain, multiple fibromyalgia tender points, effusion in her right knee, and medial joint line tenderness.  (Tr. 328).

On plaintiff's January 26, 2017 follow-up visit with Dr. Alappatt, plaintiff reported more joint and muscle pain and bothering in her right and left trochanteric area.  (Tr. 331).  On examination, Dr. Alappatt reported that plaintiff was well-developed, nourished, and in no apparent distress; had normal respiratory rate and pattern with no distress and normal breath sounds with no rales, rhonchi, wheezes or rubs; was alert and oriented times three with appropriate affect and demeanor; and had nail clubbing, bilateral knee pain, multiple fibromyalgia tender points, bilateral trochanteric bursae, right subacromial bursa, left lower lumbar paraspinals, and effusion in her right knee.  (Tr. 332).  On February 2, 2017, presented to Dr. Alappatt for a "DepoMedrol injection."  (Tr. 334).  The record demonstrates that plaintiff's February 2, 2017 appointment with Dr. Alappatt was plaintiff's final follow-up visit with Dr. Alappatt.

On April 5, 2017, Dr. Alappatt wrote a letter that provides:

I am the treating Rheumatologist for Ms. Higdon and have been since November 2010.  My patient suffers from a chronic lung disorder known as Histiocytosis X. This disorder is associated with a chronic joint and muscle pain disorder.  She suffers from dyspnea, cough, fatigue, joint stiffness, cognitive challenges etc.  Due to lack of oxygen, she has fatigue and cognitive challenges.  There is no treatment for Ms. Higdon's disease.

Ms. Higdon also has a combination of arthritic and pulmonary issues that will cause her to have indefinite care.  She is not able to participate in a competitive work environment.  She is limited to 1 hour of daily desk/computer/phone work 5 days/week.

(Tr. 613).

The ALJ declined to give Dr. Alappatt's April 2017 opinion controlling weight, and instead gave it little weight.  (Tr. 24-25).  The ALJ recited the treating physician rule and acknowledged that Dr. Alappatt was a specialist with a long treatment history with plaintiff.  (*Id.*).  The ALJ, however, found that the records of Dr. Alappatt "do not demonstrate such severe restriction."  (Tr. 24).  The ALJ stated that Dr. Alappatt's "records and the remainder of the record do not support his vague conclusion that [plaintiff] is unable to work more than one hour per day."  (Tr. 25).  The ALJ specifically found that Dr. Alappatt's "citation to her [plaintiff's] symptoms of respiratory problems in support of his conclusion do not correspond with his physical examinations that show normal respiratory functioning, and his specialization is not pulmonology but rheumatology."  (*Id.*).  Finally, the ALJ gave little weight to Dr. Alappatt's opinion because his conclusion that plaintiff would not be able to participate in a competitive work environment and would be unable to work more than one hour per day is a conclusion "reserved to the Commissioner."  (*Id.*).

Plaintiff alleges that the ALJ erred in giving the opinion of Dr. Alappatt little weight because the "ALJ's conclusion appears to be a mere disagreement with the longtime treating specialist here."  (Doc. 14 at PAGEID 730).  The record demonstrates that the ALJ reasonably discounted the opinion of Dr. Alappatt.  The ALJ gave "good reasons" for giving "little weight" to Dr. Alappatt's opinion, and those reasons are substantially supported by the record.

First, the ALJ reasonably rejected Dr. Alappatt's opinion that plaintiff would "not able to participate in a competitive work environment" as a conclusion reserved to the Commissioner.  (Tr. 25).  As the ALJ correctly concluded, a finding that a claimant is disabled or unable to work is one reserved to the Commissioner based on Social Security rules and regulations.  Whether a

11

person is disabled within the meaning of the Social Security Act, i.e., unable to engage in substantial gainful activity, is an issue reserved to the Commissioner, and a medical source's opinion that his patient is "disabled" or "unable to work" is not "giv[en] any special significance." 20 C.F.R. § 416.927(d)(3). *See Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2008) (opinions by medical source on issues reserved to Commissioner are never entitled to controlling weight or special significance); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Therefore, the ALJ properly gave little weight to Dr. Alappatt's opinion that plaintiff would not able to participate in a competitive work environment. (Tr. 25).

Second, the ALJ gave Dr. Alappatt's opinion "little weight" because the substantial evidence of record did not support his conclusions that plaintiff would not be able to work more than one hour per day. (*Id.*). The ALJ reasonably determined that the limitation and restriction that Dr. Alappatt assessed, i.e., only working one hour per day for five days a week, was inconsistent with the other medical evidence of record, which consisted of largely normal examination findings. Specifically, the ALJ noted that Dr. Alappatt's opinion that plaintiff exhibited symptoms of respiratory problems in support of his conclusion did "not correspond with his physical examinations that show normal respiratory functioning." (*Id.*). Each of Dr. Alappatt's treatment notes demonstrates that plaintiff had "normal respiratory rate and pattern with no distress" on physical examination. (Tr. 309, 311, 314, 318, 321, 325, 328, 332). Further, although plaintiff frequently complained of pain in her knees and joints, not a single treatment note from Dr. Alappatt shows that plaintiff reported any difficulty breathing or had symptomology indicative of respiratory problems. Therefore, the ALJ reasonably concluded that Dr. Alappatt's own treatment notes do not support his opinion. Moreover, physical examinations with plaintiff's primary care physician, Dr. Glickfield, document only "occasional[] . . . stridor or

12

wheezing (e.g. B11F, pp. 24, 28, 31, 38, 45)" and plaintiff "had no hospitalizations for exacerbations in the relevant period. (B7F, p.6)." (Tr. 24).

Plaintiff points to a March 9, 2016 CT of plaintiff's chest and a pulmonary function test dated June 13, 2017 as evidence consistent with Dr. Alappatt's opinion. (Doc. 14 at PAGEID 730). The March 2016 CT scan showed:

> [P]ersistent diffuse cystic lung disease with architectural distortion. Differential diagnosis remain[ed] similar as previously described to include interstitial lung disease secondary to lupus, lymphangioleiomyomatosis, or alpha-1 antitrypsin deficiency. Of note, the previously noted pulmonary nodules [had] markedly decreased in number and size since the previous examination. This likely represented superimposed infection/inflammation.

(Tr. 499). Plaintiff fails to explain the significance of this CT scan or how it supports Dr. Alappatt's opinion. In addition, plaintiff has not pointed to any medical source evidence explaining the significance of the CT scan. Nor is there any evidence Dr. Alappatt ever saw this scan or relied on it. At best, the CT scan appears to confirm plaintiff's diagnoses of interstitial lung disease, which the ALJ found to be a severe impairment. (Tr. 18).

Plaintiff's June 13, 2017 pulmonary function test revealed moderately severe obstructive defect, air trapping, decreased ERV consistent with body habitus, and moderately decreased diffusing capacity. (Tr. 398). Plaintiff's subsequent pulmonary function test on October 3, 2017, however, revealed that plaintiff's pulmonary function study was "[w]ithin normal limits." (Tr. 410-11). The ALJ expressly considered the two pulmonary studies and found that "[i]n consideration of the more severe findings on the earlier study and the claimant's history, she is limited to sedentary work with a variety of respiratory restrictions to accommodate these conditions." (Tr. 24). Plaintiff fails to explain how the ALJ's decision is not substantially justified in this regard.

13

Plaintiff also directs the Court to her September 2017 motor vehicle accident as further proof that the ALJ's decision was in error.  (Doc. 14 at PAGEID 730).  Plaintiff argues that a CT of plaintiff's cervical spine following the motor vehicle accident showed "small C5-C6 and C6-C7 disc protrusions."  (*Id*.) (citing Tr. 476-80).  Plaintiff also cites to October 2017 notes from plaintiff's physical therapist which documented "impaired joint mobility, motor function, muscle performance, and range of motion associated with connective tissue dysfunction in addition to impaired sitting tolerance and disrupted sleep."  (*Id*.) (citing Tr. 508).  Plaintiff, however, fails to explain how the ALJ allegedly erred in the consideration of this evidence that occurred roughly six months after Dr. Alappatt gave his opinion in April 2017.  The ALJ considered the effect of plaintiff's motor vehicle accident and subsequent physical therapy sessions in plaintiff's disability determination:

> The claimant was involved in a motor vehicle accident in September 2017 and complained of neck pain (B11F, p. 27).  A cervical spine CT showed a small central disc protrusion (B10F, p. 25).  She was prescribed a course of physical therapy for this.  She attended briefly, failed to return, then came back for another course and did not complete that either, resulting in her discharge (B10F, pp. 66, 94).  At her last encounter in March 2018, she reported significant pain relief (B10F, p. 91).  As this condition appeared to resolve within 12 months, it is also not considered "severe."  Further, the restriction herein for sedentary work would address any residuals from this condition.

(Tr. 19).  The ALJ considered the impact of the motor vehicle accident in plaintiff's disability determination.  Plaintiff fails to point to any specific error concerning the ALJ's treatment of plaintiff's alleged injuries resulting from the September 2017 motor vehicle accident.

The above evidence substantially supports the ALJ's finding that Dr. Alappatt's opinion was entitled to little, and not controlling, weight.  (Tr. 24-25).  The ALJ thoroughly reviewed the evidence of record and explained the "good reasons" for giving Dr. Alappatt's opinion "little weight."  Plaintiff has not cited any relevant evidence of record to show the ALJ's analysis lacks

substantial support. Accordingly, plaintiff's assignment of error concerning the weighing of Dr. Alappatt's opinion is overruled.

### 2. Dr. Glickfield

Dr. Glickfield has been plaintiff's primary care physician for over thirty-six years. (Tr. 25, 413). During the alleged period of disability, plaintiff saw Dr. Glickfield ten times. (*See* Tr. 564-609). On July 11, 2014, plaintiff presented to Dr. Glickfield for anxiety, fatigue, weight gain, and neck pain. (Tr. 566).[5] Dr. Glickfield stated, "She [plaintiff] applied for disability and feels that the judge did not consider her case. The information for the rejection was about 60% in error telling her that she does not have a rheumatologic disease and her lung disease is cured. Apparently my information wasn't even considered even though I have known her since she was 1 year old." (Tr. 566). Dr. Glickfield opined that plaintiff was "totally disabled with little chance of recovery." (*Id*.). On physical examination, Dr. Glickfield reported that plaintiff was oriented to person, place, time and appeared well-developed and well-nourished; she had normal rate, regular rhythm, normal heart sounds and intact distal pulses; she exhibited tenderness in her pulmonary/chest and had rales, but she had no stridor, respiratory distress, or wheezes; she had a normal mood, affect, and behavior; and her judgment and thought content were normal. (Tr. 565).

On July 28, 2015, Dr. Glickfield reported that plaintiff was having lots of pain and felt weak, was under a fair amount of stress, and was gaining weight. (Tr. 572). Dr. Glickfield recommended the continuance of her current treatments and to try B12 due to a family history of pernicious anemia. (*Id*.). On physical examination, Dr. Glickfield stated that plaintiff was oriented to person, place, time and appeared well-developed and well-nourished; she had normal

---

[5] The Court notes that this was the first treatment note from Dr. Glickfield following the prior ALJ decision denying plaintiff's application for SSI and DIB. (*See* Tr. 15-16).

rate, regular rhythm, normal heart sounds and intact distal pulses; her breath sounds were normal and she had no wheezes or rales; she had a normal mood and affect; and her behavior, judgment, and thought content were normal. (Tr. 571). On March 7, 2016, plaintiff presented for a follow-up appointment with Dr. Glickfield. (Tr. 574-77). Dr. Glickfield reported that plaintiff was "somewhat surprised that in a visit with Dr. Kapur she was told she ha[d] serious lung issues that may some day require lung transplant. She state[d] she does just fine with her normal exertion but admits to not have anything in reserve." (Tr. 575). On physical examination, Dr. Glickfield stated that plaintiff was oriented to person, place, time and appeared well-developed and well-nourished; she had normal rate, regular rhythm, normal heart sounds and intact distal pulses; stridor and rales were present, but she had no respiratory distress or wheezes; and she had a normal mood and affect and her behavior was normal. (*Id*.). Dr. Glickfield recommended that plaintiff return in six weeks. (Tr. 576).

Seven months later, plaintiff returned to Dr. Glickfield for a sore throat, fatigue, and fever lasting three days. (Tr. 578). On examination, Dr. Glickfield noted that plaintiff was oriented to person, place, and time and appeared well-developed and well-nourished; stridor was present, but her breath sounds were normal and she had no wheezes or rales; and she had a normal mood and affect. (Tr. 579). Plaintiff was told to treat with amoxicillin and to call if she was not feeling better within three days. (*Id*.). On May 16, 2017, plaintiff presented to Dr. Glickfield and stated that she had pain in her left hip and was upset about gaining weight. (Tr. 581). Dr. Glickfield reported that plaintiff was going to have "breathing tests done." (*Id*.). On examination, Dr. Glickfield stated that plaintiff was oriented to person, place, and time and appeared well-developed and well-nourished; she had wheezes, but no rales or stridor; she had a normal mood and affect; and her behavior, judgment, and thought content were normal. (Tr.

16

582). Dr. Glickfield recommended that plaintiff continue with her current treatments and to follow-up in six months. (Tr. 583).

On September 22, 2017, plaintiff presented to Dr. Glickfield for an appointment following a motor vehicle accident. (Tr. 585). Dr. Glickfield reported that plaintiff was seen in the Emergency Room after she was involved in a motor vehicle accident. (*Id*.). Plaintiff was having pain turning her neck. (*Id*.). On examination, Dr. Glickfield reported that plaintiff was oriented to person, place, and time and appeared well-developed and well-nourished; she had stridor, wheezes, and tenderness to her pulmonary/chest but no rales; and she had a normal mood and affect. (Tr. 586). Dr. Glickfield recommended that plaintiff return in about one month. (*Id*.). Plaintiff returned to Dr. Glickfield on March 28, 2018 for a routine check-up where he noted that plaintiff was having problems with her neck, experiencing back pain, and her left ear had been popping. (Tr. 588). Dr. Glickfield recommended that plaintiff consider a nasal spray and treat her ailments with Sudafed and rest. (Tr. 589). On examination, plaintiff was oriented to person, place, and time and appeared well-developed and well-nourished; stridor was present, but her breath sounds were normal and she had no wheezes or rales; and she had a normal mood and affect and her behavior, judgment, and thought content were all normal. (*Id*.).

On January 16, 2019, plaintiff presented to Dr. Glickfield stating that she was gaining weight and tired all the time because of her thyroid medication. (Tr. 594).[6] Plaintiff reported that she continued to have difficulty breathing and had difficulty with stressful situations. (Tr. 595). On examination, Dr. Glickfield reported that plaintiff was oriented to person, place, and time and appeared well-developed and well-nourished; stridor was present, but her breath sounds

---

[6] The Court notes that plaintiff also saw Dr. Glickfield on July 11, 2018 for treatment of a hornet sting where Dr. Glickfield provided plaintiff medications for treatment and possible infection of the area. (Tr. 590-93). On examination, plaintiff's breath sounds were normal; she had no stridor, wheezes, or rales; and she had a normal mood and affect. (Tr. 592).

17

were normal and she had no wheezes or rales; and her speech, behavior, judgment and thought content, and cognition and memory were all normal. (Tr. 595-96). Dr. Glickfield also reported that plaintiff's mood appeared anxious and depressed. (Tr. 596). Dr. Glickfield recommended that plaintiff continue with her current treatments. (*Id.*). On February 19, 2019, plaintiff presented to Dr. Glickfield with congestion and sinus drainage that had been present for three days. (Tr. 602-03). Dr. Glickfield recommended plaintiff take amoxicillin to treat her condition. (Tr. 604). On examination, Dr. Glickfield reported that plaintiff was oriented to person, place, and time and appeared to be well-developed and well-nourished; stridor was present, but her breath sounds were normal and she had no wheezes or rales; and her mood and affect, behavior, judgment, and thought content were all normal. (Tr. 603). This treatment note was the final treatment note in the record from Dr. Glickfield.

On January 19, 2019, Dr. Glickfield completed a mental impairment questionnaire on behalf of plaintiff. (Tr. 413-15). Dr. Glickfield stated that he had been treating plaintiff for thirty-six years and her DSM-V diagnoses were anxiety and depression. (Tr. 413). Dr. Glickfield opined that plaintiff's psychiatric conditions would exacerbate her experience of pain and other physical symptoms when plaintiff was stressed. (*Id.*). Dr. Glickfield opined that plaintiff would be off task due to her physical/psychological problems 20% or more of an average typical work week and would be absent from work due to her impairments or treatment more than three times a month. (*Id.*). Dr. Glickfield opined that on a day-to-day basis in a regular work setting, plaintiff would have "None to Mild" restrictions in her ability to understand, remember, or apply instructions and procedures, "moderate" restrictions in her ability to concentrate, persist, or maintain pace during work activities, and "moderate restrictions" in her ability to adapt or manage herself during work tasks. (Tr. 414). Dr.

Glickfield also stated that plaintiff had "none to mild" limitations in her ability to plan, maintain hygiene, and address normal hazards. (Tr. 415). Dr. Glickfield opined that plaintiff "[w]ould like to work but may only be able to function a few hours a day (~ 3 hrs) and maybe none on some bad days." (*Id*.).

In reviewing Dr. Glickfield's opinion, the ALJ declined to give it controlling weight and instead gave it partial weight. (Tr. 25-26). The ALJ acknowledged that Dr. Glickfield had "a long treatment history with the claimant, noting he has treated her for 36 years." (*Id*.). The ALJ found that Dr. Glickfield's opinion that plaintiff's "depression and anxiety symptoms are mild to moderate" was "consistent with the findings here." (*Id*.). The ALJ stated that "Dr. Glickfield's records document no complaints of mental health issues by the claimant until she presented for the January 2019 encounter where Dr. Glickfield completed this form, and at that time he documented she presented with abnormal mental status findings of anxious and depressed mood (B11F, pp. 37-38)." (Tr. 26). The ALJ also stated that "[a]t all prior and subsequent encounters with Dr. Glickfield, the claimant report[ed] no mental health issues and her mental status [was] noted to be fully normal (B2F, p. 6; B11F, pp. 17, 24, 28, 31, 34, 45)." (*Id*.).

Plaintiff argues that the ALJ erred in only giving Dr. Glickfield's opinion partial weight because "Dr. Glickfield's opinions are not inconsistent with the clinical findings in the treatment record." (Doc. 14 at PAGEID 732-33). Plaintiff also contends that the ALJ is "merely disagreeing with the longtime treating physician here, which does not constitute substantial evidence to discount the treating source opinion." (*Id*. at PAGEID 732). Plaintiff finally argues that the ALJ erred by failing to explain which portion of Dr. Glickfield's opinion was given partial weight. (*Id*. at PAGEID 731). The Commissioner argues in opposition that the ALJ properly weighed the opinion of Dr. Glickfield. (Doc. 21 at PAGEID 762-64).

The ALJ reasonably determined that Dr. Glickfield's opinion on plaintiff's mental functioning was internally inconsistent because his own treatment records document no complaints of mental health issues, apart from a single instance on January 19, 2019, which was three days before Dr. Glickfield completed his questionnaire.  (Tr. 26).  The ALJ thoroughly reviewed the entirety of Dr. Glickfield's treatment notes and found that they repeatedly disclosed normal findings.  (*Id*.).  *See Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 475 (6th Cir. 2008) ("Unlike the cases where [the Sixth Circuit has] held that the ALJ failed to state 'good reasons' for rejecting the treating physician's opinion, here the ALJ did not merely cast aside the treating physician's opinion without explanation."); *see also Alpajon v. Comm'r of Soc. Sec.*, No. 1:13-cv-617, 2014 WL 4626012, at *5, 6 (S.D. Ohio Sept. 11, 2014) (the ALJ did not err in failing to give the treating physician's opinion controlling weight because the opinion was inconsistent with his own treatment notes as well as his interpretation of plaintiff's imaging studies).  Specifically, each of Dr. Glickfield's treatment notes during the relevant time period, with the exception of a single instance where plaintiff presented with a "depressed mood" and "appear[ed] anxious" (Tr. 596), demonstrates that plaintiff had a normal mood and affect, and her behavior, judgment, and thought content were also normal.  (Tr. 565, 571, 575, 579, 582, 586, 589, 592, 603).

In addition, the ALJ reasonably determined that Dr. Glickfield's restrictions were inconsistent with the other medical evidence of record, which also consisted of normal examination findings.  (Tr. 26).  Specifically, Dr. Alappatt's examinations of plaintiff consistently revealed that plaintiff was alert and oriented and had an appropriate affect and demeanor.  (Tr. 309, 311, 314, 318, 321, 325, 328, 332).

Plaintiff does not cite to any evidence of mental health impairments in support of Dr. Glickfield's opinion.  Instead, plaintiff appears to argue that clinical findings "such as abnormal muscle tone, deformity, and abnormal coordination" are consistent with Dr. Glickfield's opinion that plaintiff would be off task 20 percent or more of the workday and absent from work more than three times a month due to her impairments.  (Doc. 14 at PAGEID 731-32).  Yet, Dr. Glickfield was asked to complete a "Mental Impairment Questionnaire" and gave an opinion solely related to plaintiff's mental health functioning.  (Tr. 413, listing diagnoses of anxiety and depression).  Nowhere in this questionnaire does Dr. Glickfield relate his opinion to "abnormal muscle tone, deformity, and abnormal coordination" as plaintiff contends.  (*Id.*).  Even so, the ALJ acknowledged that Dr. Glickfield arguably could have been considering plaintiff's physical limitations given his extensive treatment history of plaintiff.  (Tr. 26).  The ALJ noted, however, that Dr. Glickfield's findings of "abnormal muscle tone," "deformity," and "abnormal coordination" were completely absent from the findings of other physicians who examined plaintiff.  (*Id.*).  The ALJ reasonably determined that Dr. Glickfield's findings are not in keeping with the abnormalities generally associated with pulmonary conditions, lupus, or fibromyalgia (*Id.*) and do not support his opinion.

Plaintiff also contends that the ALJ erred by failing to identify which portions of Dr. Glickfield's opinion were "partially" credited.  (Doc. 14 at PAGEID 731).  The ALJ, however, expressly stated that Dr. Glickfield's opinion as to the mild to moderate nature of plaintiff's depression and anxiety symptoms was "consistent" with the mental status exams of record, indicating this portion of Dr. Glickfield's opinion was credited.  (Tr. 25).  However, the balance of Dr. Glickfield's opinion—that plaintiff would be off task 20% or more of an average typical work week and would be absent from work due to her impairments or treatment more than three

times a month—was not credited because those opinions were not consistent with the substantial evidence of record or with Dr. Glickfield's own treatment records for the reasons explained by the ALJ and discussed above. (*See* Tr. 25-26). The Court finds no error in this regard.

The evidence substantially supports the ALJ's finding that Dr. Glickfield's opinion was not entitled to controlling weight. The ALJ reviewed the evidence of record and gave "good reasons" for giving Dr. Glickfield's opinion "partial weight." (*See* Tr. 26-26). Plaintiff has not cited any evidence to show that the ALJ's analysis lacks substantial support in the record. Accordingly, plaintiff's assignment of error concerning the weighing of Dr. Glickfield's opinion is overruled. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 549-50 (6th Cir. 2014) (treating pain management specialist's opinion not entitled to controlling weight where it was inconsistent with his treatment notes and results of imaging studies); *see also Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 112-13 (6th Cir. 2010) (treating physician's opinion not entitled to controlling weight where it was inconsistent with his own prior reports and treatment notes); *Davidson v. Comm'r of Soc. Sec.*, No. 1:12-cv-683, 2013 WL 5670977, at *6-8 (S.D. Ohio Oct. 15, 2013), *report and recommendation adopted*, 2014 WL 1271023 (S.D. Ohio Mar. 27, 2014) (The ALJ's finding that the treating physician's opinion was not supported by his own treatment notes was substantially supported by the record).

Additionally, while not expressly designated as a separate assignment of error, plaintiff argues that the ALJ "failed to properly consider and address the additional limitations caused by the significant side effects from [plaintiff's] many prescribed medications." (Doc. 14 at PAGEID 733). In support, plaintiff points to an October 2017 statement from her physical therapist that plaintiff appeared "very drowsy today" and was "[u]nsure if this [was] related to side [e]ffects of medication." (*Id.*) (citing Tr. 508) (alterations in original). Plaintiff also cites to

22

her testimony at the ALJ hearing that she was "always exhausted" and takes "so many medications." (*Id*.) (citing Tr. 52-53). Finally, plaintiff cites to a January 2019 progress note reporting her complaint that her thyroid medication was causing weight gain and made "her extra tired all the time." (*Id*.) (citing Tr. 594).

Plaintiff, however, fails to allege how the ALJ specifically erred in this regard. Contrary to plaintiff's argument, the ALJ expressly acknowledged plaintiff's testimony that "her medications make her tired and cause other side effects such as sores in her mouth and dry eyes." (Tr. 23). In review of the evidence, however, the ALJ reasonably concluded that "[t]here is no evidence of adverse side effects from treatment or medication that would prevent the claimant from performing competitive work activity at the 'sedentary' level of exertion on a regular and continuing basis." (Tr. 27). The ALJ did not err in this finding.

Finally, plaintiff alleges that "the ALJ also reversibly erred by applying substantially more rigorous scrutiny to the opinions of longtime treating sources Dr. Alappatt and Dr. Glickfield than to the opinions of the state agency non-examining sources." (Doc. 14 at PAGEID 733). Citing to SSR 96-6p, plaintiff argues that "the ALJ's vague, superficial 'evaluation' of the non-examining opinions falls well short of the 'progressively more rigorous' scrutiny that he was required to apply to these opinions." (*Id*. at PAGEID 734). The Commissioner argues in response that there is "no evidence that ALJ improperly appl[ied] substantially more rigorous scrutiny to the treating source opinions here." (Doc. 21 at PAGEID 765) (internal quotation marks omitted). The Commissioner also argues that plaintiff's reliance on SSR 96-6p is improper because "[t]he Agency rescinded SSR 96-6p effective March 27, 2017, long before the date of the ALJ's May 2019 decision. *See* SSR 96-6p. It was thus no

longer in effect when the ALJ rendered his decision, and its replacement, SSR 17-2p, contains none of the language Plaintiff cites." (*Id*.).

Although SSR 96-6p was rescinded effective March 27, 2017, it is still applicable in this case because plaintiff filed her claims before March 27, 2017. *See Brown v. Saul*, No. 3:19-cv-583, 2020 WL 1478998, at *9 n. 7 (N.D. Ohio Mar. 26, 2020) ("SSR 96-6p has been rescinded and does not apply to claims filed after March 27, 2017. Since Plaintiff filed her claim in 2016, SSR 96-6p still applies.") (citing SSR 17-2p, 82 Fed. Reg. 15263-02 (Mar. 27, 2017) (rescinding and replacing SSR 96-6p)).

On April 15, 2017, state agency reviewing psychologist Dr. Robert Baker reviewed the medical evidence of record, along with the prior June 27, 2014 ALJ decision, and concluded that "there [was] no new and material evidence" and plaintiff's "functional limitations continue[d] to be primarily in the area of social interaction." (Tr. 73). Dr. Baker did not adopt the psychiatric review technique findings by the prior ALJ because the evaluation criteria had changed. (*Id*.). Dr. Baker, however, adopted the ALJ's June 27, 2014 mental RFC. (*Id*.). On June 26, 2017, state agency psychologist Dr. Kristen Haskins adopted Dr. Baker's opinion. (Tr. 90).

The ALJ gave "partial weight" to the assessments of Drs. Baker and Haskins. (Tr. 21). The ALJ noted that they did not adopt the psychiatric review technique findings of the prior ALJ because the evaluation criteria had changed since that decision was rendered. (*Id*.). The ALJ, however, included additional restrictions in the RFC finding "[b]ased on the evidence of record, including that received at the hearing level[.]" (*Id*.). Specifically, the ALJ explained that "the restrictions for no production rate pace or strict production quotas has been added, as well as a restriction for only occasional changes to a routine work setting. The claimant's physical

difficulties causing fatigue and some poor stress tolerance she described in testimony and reports justify these additional restrictions." (*Id*.).

On February 11, 2017, state agency reviewing physician Dr. James Cacchillo reviewed the medical evidence of record and adopted the ALJ's RFC dated June 27, 2014, i.e., "sedentary work with no exposure to the extremes of heat, cold, or humidity." (Tr. 74-75). On October 28, 2017, state agency physician Dr. Steve McKee adopted Dr. Cacchillo's opinion. (Tr. 89-90, 92). The ALJ gave "great weight" to the opinions of Drs. Cacchillo and McKee finding that they were "supported by the record, including evidence received at the hearing level." (Tr. 26).

Plaintiff argues that the ALJ's "vague superficial 'evaluation' of the non-examining opinions falls well short of the 'progressively more rigorous' scrutiny that [the ALJ] was required to apply to these opinions." (Doc. 14 at PAGEID 734). Plaintiff provides no further explanation, discussion, or analysis as to her arguments pertaining to this alleged error by the ALJ. Accordingly, the Court finds that plaintiff waived this argument by providing no explanation as to why she believes the ALJ erred. *See Kennedy v. Comm'r of Soc. Sec*., No. 03-1276, 2003 WL 23140056, at *1 (6th Cir. Dec. 12, 2003) (citations omitted) ("[I]ssues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'").

Nevertheless, this alleged error is also overruled on the merits because plaintiff has not demonstrated that the ALJ committed any specific error relating to the assessments of the non-examining state agency reviewers. *See Kepke v. Comm'r of Soc. Sec*., 636 F. App'x 625, 633 (6th Cir. 2016) ("It cannot be said that the ALJ did not subject the non-examining sources' opinions to scrutiny simply because he adopted their opinions but discredited the treating source opinions."). Plaintiff argues that the ALJ erred in categorically giving "great weight" to the non-

examining physicians.  (Doc. 14 at PAGEID 734).  In making this argument, however, plaintiff

ignores the weight that the ALJ gave to Drs. Baker and Haskins, also non-examining physicians.

The ALJ gave Drs. Baker and Haskins opinions "partial weight" and included additional

restrictions in his RFC finding.  (*See* Tr. 21).  Therefore, plaintiff's argument that the ALJ erred

by improperly evaluating the state agency opinions by giving the "opinions of the non-examining

physicians" "great weight" is belied by the record.  Plaintiff has not shown that the ALJ

committed any error relating to the assessments of the non-examining state agency reviewers.

This assignment of error is therefore overruled.

## IT IS THEREFORE ORDERED THAT:

The decision of the Commissioner is **AFFIRMED** and this case is closed on the docket

of the Court.

Date:  9/2/2021

Karen L. Litkovitz
Chief United States Magistrate Judge